We move to the third case this morning. Ardell Sanders v. Michael Melvin. May it please the Court. You may proceed. Thank you, Your Honor. I want to zero in today on what was actually alleged in Mr. Sanders' complaints and the lower court's mischaracterizations of those complaints. The lower court uncharitably paraphrased fragments of Mr. Sanders' allegations without reading the allegations in context. So if we look at the pro se complaint, I'll direct Your Honors to paragraph 32, which is appendix 20. Mr. Sanders actually alleges that defendants Andrea Moss, Kelly Haag, and Dr. Marano required the plaintiff and other inmates to self-mutilate, overdose on pills, hang themselves, falsely declare to be suicidal, in order to speak with them about non-suicidal issues. He then spends the next few paragraphs explaining what he meant by those allegations. He describes two occasions telling prison guards that he wanted to speak to mental staff about his depression. And in response, he was told that Dr. or Defendant Moss said, if he was not suicidal, no one wants to see him right now. He alleges that when he conveyed his concerns that mental health staff was requiring him to self-mutilate or self-harm in order to be seen, Defendant Marano said, that's what it seems like, and walked away. Now, there's no evidence these allegations were a lie. Importantly, no one disputes that Mr. Sanders actually attempted suicide in October of 2015 and July of 2016. And Mr. Sanders confirmed these conversations happened when he testified under oath. Yet the lower court failed to so much as mention Mr. Sanders' testimony, and there's certainly no evidence in the record that shows that these conversations did not happen. Do we know, Ms. Hampton, why on remand there was not an evidentiary hearing? Your Honor, I don't know the answer to that question. Once the case went back on remand, the lower court issued a merit review order allowing Mr. Sanders to go forward only on the deliberate indifference claim. He then, Sidley Austin, my firm, then became his counsel. We paid the filing fee, filed an amended complaint. The amended complaint asserted five new allegations. There was a dispute there on the motion for judgment on pleadings. And in that instance, then, the lower court said, you know, this case is no longer proceeding within the scope of remand. In form of pauper status, no longer applies. He can go forward on the entire amended complaint. And is that history part of the reason for the argument with regard to why there should not be sanctions here? Your Honor, the procedural posture is what makes this case an oddity. I think the most straightforward path for reversing the lower court is simply to find that Mr. Sanders did not lie on these facts and did not lie in his allegations. But certainly the procedural posture is, as I said, what makes this case an oddity. And it's also what this court should consider when considering how the lower court should have thought of sanctions, if at all. If I may continue to review Mr. Sanders' pro se complaint, the lower court also referred to his prayer for relief, which echoed the allegations I mentioned before. And those allegations, again, there's no evidence that there's a lie. And indeed, they're supported by the report of the monitor Pablo Stewart and the Rasha litigation, who found that IDOC routinely ignored inmates' requests for mental treatment and that custody staff was inappropriately acting as gatekeepers. And we also had Mr. Sanders' expert Dr. Grassi, a psychiatrist, who found that defendants' documented failures exacerbated his mental illness and caused him to harm himself. And so I wanted to read the complaint today or direct Your Honor's attention to the complaint today, because contrary to the lower court's mischaracterizations, there's no allegation that Mr. Sanders had no mental health interactions absent self-harm. What's more, under the law, the court is required to read Mr. Sanders' allegations charitably and in the full context of the complaint. So in light of this, the selection of mental health records cited by the lower court simply cannot establish that Mr. Sanders committed a fraud on the court. Instead, what happened here was that an undisputably mentally ill person tried his best to characterize his suffering and the treatment he was not getting. It's undisputable he was in solitary confinement for eight years. He attempted suicide, and he genuinely believed that he had to do that in order to see mental health treatment or mental health staff for psychotherapy. So it would be a great disservice not only to him and the legal system to rule this case a fraud on the court. So for the reasons set forth today and in Mr. Sanders' briefs, we respectfully ask this court to reverse the judgment below and remand for further proceedings. I'd like to reserve the remaining time for rebuttal unless there are further questions. Thank you. Good morning, Your Honors Counsel. May it please the court. My name is Chaya Citrin, Assistant Attorney General on behalf of State Defendants Appellees Michael Melvin, Terry Kennedy, Deidre Marano, and Rob Jeffries. The district court did not clearly err in finding that Sanders sought IFP status based on an allegation in his initial complaint that he knew was false. And the court did not abuse its inherent authority to sanction that misconduct by dismissing this case with prejudice. Ms. Citrin, what about the fact that there's been evolution in this complaint from the pro se complaint to the amended complaint? Certainly there's a lengthy procedural history. And whenever we get into the sanctions world, one of the things we're thinking about is there's aspects of due process there. And here it looks like the sanctions went all the way back to the beginning and said, well, you shouldn't have done these things, notwithstanding all this history that occurred since. I want to give you a chance to respond to that. OK, so a couple of points. One is that this court in Sanders one anticipated the possibility that Sanders might pay the filing fee. And this court noted that even if he were to pay the filing fee, the district court could still sanction him if he had lied in his initial complaint. And that makes sense because his initial lie is what enabled the entire case to go forward. He obtained the benefit of IFP status and he enjoyed that benefit for several months until he paid the filing fee. So that Sanders one case specifically uses the word may write, then it may dismiss the case as a sanction. Then the concern I think we have is, did the district court here accelerate to a conclusion of dismissal with prejudice without necessarily explaining why or considering other options? Same question I posed him as Hampton. There wasn't an evidentiary hearing here. So the record that led up to the sanction is circuitous. OK, so yes, to explain the lack of evidentiary hearing, I'd like to note that Mr. Sanders was counseled and through counsel, he did not request a live evidentiary hearing. There was a hearing on the documentary evidence that was submitted and he didn't request a live hearing. And that's presumably because he knew that a live hearing would not have been helpful. And that's because he had testified at his deposition that he could request non-crisis mental health care back in 2016 when allegedly he was being denied mental health care. And he also testified that he was receiving mental health care before every incident in which he engaged in self-harm. And the record bears that out. The documentary evidence shows that back in September 2015, which was shortly before he overdosed on medication the following month, he asked to see a mental health professional. He denied having any urgent concerns and he met with a psychiatrist within two weeks. And then again the following year, days before he engaged in self-harm in July 2016, he asked to speak with a mental health provider. He met with a psychologist and he denied any mental health concerns at the time. And again, three weeks before he filed the initial complaint in September 2016, he attended psychotherapy with a psychologist. And those psychotherapy sessions continued after the filing of the complaint on a monthly basis. And he hasn't, interestingly, he didn't submit an affidavit to try to create a factual question about whether he knew that he could not self-harm. And he's never argued that he lacked the capacity to understand, to know whether he had been telling the truth in his initial complaint. I want to ask you a question regarding the district court's opinion here and the complaint. The district court, the way I read the district court's complaint, I'm sorry, the district court's opinion. The district court, the magistrate judge here I think, writes that it boils down to the defendant's allegation that mental care or mental health care wasn't provided to inmates in segregation unless they engaged in self-harm. That's, I think that's how the district court boiled down Mr. Sanders' complaint. As he's alleging, unless an inmate in segregation engages in self-harm, he's not going to receive mental health care. But the way I read paragraph 32 of Mr. Sanders' complaint is that he alleges that he would receive or could receive mental health care if he falsely declared to be suicidal. Which is not engaging in self-harm. Is the district court here reading too much into what Mr. Sanders wrote in his complaint by boiling it down to, you have to engage in self-harm in order to get mental health treatment if you're in segregation? When that's not exactly what he said. In other words, you could not engage in self-harm, right? And according to Mr. Sanders' complaint, at least the way I read it, you could falsely declare that you're suicidal. Sort of an emergent situation, right? Like self-mutilization or like overdosing or attempting to commit suicide. You can falsely declare to create an emergency, in which case you'll get mental health care. But I guess, is Mr. Sanders really saying here, that's what you need to do in order to get mental health care? Right, he was saying you have to falsely declare that you're suicidal or actually engage in self-mutilation. And that's how this court interpreted the complaint in Sanders 1. This court interpreted the complaint as alleging that solitary confinement causes prisoners to lose the benefit of mental health care. And that only self-mutilation or a credible threat of self-mutilation restores that care. But I guess what I'm getting at is, isn't Mr. Sanders saying, in order to get mental health care if you're in segregation, you have to create an emergency situation. Whether false or not, you have to create an emergency situation. Falsely declare you're going to commit suicide, overdose on pills, attempt to hang yourself, attempt self-mutilation. But you don't actually have to engage in self-harm, which is what I think the district court says. The district court says Sanders is saying you have to engage in self-harm in order to get care. But I'm not sure that's what Sanders is saying. So I think that what Sanders is saying is what you're describing, what Sanders alleged correctly. But I think that his allegation was false because he alleged that you have to declare yourself suicidal. And the record clearly shows that that was a false allegation. There were many, many instances in which he received mental health care without falsely declaring himself suicidal. So even if the district court may not have used as precise language as it could have, regardless, Sanders' allegation was objectively false. And his subjective knowledge that he didn't carry his burden to show that he had truly believed that allegation when he made it. And there's a good reason for the district court finding that he hadn't carried that burden. Besides for the extensive records showing that he had requested and received mental health care without declaring himself suicidal, his IFP application, which he had filed at the same time as his initial complaint, acknowledged that he had already struck out under the Prison Litigation Reform Act and that he needed to allege imminent danger. And then when the court denied him IFP status in his motion to reconsider, he alleged again that there's this self-mutilation first policy and that that policy placed him in imminent danger. So given all that evidence, plus his own testimony at his deposition, where he admitted that he had been receiving mental health care without threatening self-harm, and he admitted that every time he engaged in self-harm, he had already been receiving mental health care before that. All of that evidence led the district court to conclude permissibly that he had intentionally misled the court. And for that reason, the district court's factual finding was not clearly erroneous. And as to the question about the lack of an evidentiary hearing, I think it's interesting that after the sanctions motion was fully briefed, the following month, the court held a status conference. And at that conference, the court said that the motion was fully briefed and ready for a ruling and asked counsel to weigh in. And Sanders's attorney said, yes, that's correct. The motion is ready for a ruling. So if they had thought that the motion was not ready and needed to, and there was a need for a live evidentiary hearing, that would have been the ideal time to say, wait a minute, judge. Please don't rule on this yet. We need a live hearing so that you can suss out credibility. You make a point there, Ms. Citron, and certainly the point stands. The assumption, though, is that then when the court engages in this sanctions process, it's going to do so according to the appropriate rules, whether it be inherent authority or Rule 11, and that there be a sequential treatment and approach to it. I think a concern here could be that there's a lack of proportionality between the nature of the sanction, the dismissal with prejudice, and what occurred all the way at the beginning of the case, notwithstanding all the steps, the interstitial steps. Well, to answer your question, dismissal with prejudice was a reasonable sanction. And in Sanders 1, this court already had acknowledged that dismissal with prejudice would be appropriate if Sanders had lied. And that's because lying to obtain a benefit warrants that strong message, even if there are later steps along the way. And there have been cases where this court has remanded, even after summary judgment proceedings, for the district court to consider whether sanctions should have been imposed, notwithstanding all of the later proceedings. And that makes sense in this case, too, because his lie enabled the entire case to go forward. It enabled him to obtain IFP status. If not for that, the case would have floundered right then and there. So it was completely reasonable for the court to choose dismissal with prejudice as the appropriate sanction. Interestingly, there was no discussion in the district court about no explicit discussion about lesser sanctions. And probably because Sanders hadn't argued that point, he took the all or nothing approach that no sanction at all was appropriate. And this case, this court has notably upheld dismissal of prejudice many times in cases of IFP fraud. And this is just another iteration of IFP fraud. So for that reason, the district court's choice of sanction was reasonable. And the question isn't whether this court would have chosen a different sanction. It's just whether a reasonable judge could have chosen dismissal with prejudice as a reasonable sanction. And given this court's case law, it was certainly a reasonable choice for the court to make. There are no further questions. OK, then we ask that this court affirm the district court's judgment dismissing this action with prejudice. Thank you. Thank you. Thank you, Mr. Critton. Mr. Oliver. Your Honors, I'd like to pick up on the point that opposing counsel raised regarding how Mr. Sanders somehow had an obligation to request an evidentiary hearing following the remand from this court. If you look at page 7 of this court's remand order, which is at appendix page 49, it says, this court said, Instead, the parties went through the discovery process on Mr. Sanders' allegations, submitted competing bodies of evidence to the summary judgment record, and the magistrate judge admittedly did not look at that summary judgment record, and instead dismissed this case as a sanction based on an incomplete and incorrect review of the evidence. I also want to pick up on Judge Kirsch's question regarding Mr. Sanders' allegation that prisoners have to falsely declare to be suicidal, in order to obtain medical treatment. Mr. Sanders alleged that both mental health staff and prison custodial staff repeatedly told him that it seemed like he could not talk to mental health professionals unless he self-harmed or declared that he was suicidal. That is consistent with the findings of the independent monitor, on whose findings this court has previously relied in the ratio litigation, who explicitly found that prison and custodial staff were acting as improper gatekeepers, and as part of the settlement agreement, had to interpret crisis care to encompass complaints beyond mere suicidal threats or self-harm. It was a problem at Pontiac Correctional Center, where Mr. Sanders was incarcerated during the relevant time frame that was found by the independent monitor. Mr. Sanders' allegations are entirely consistent with the findings of the independent monitor. At bottom, this whole issue underscores the point that this is a run-of-the-mill factual dispute. Mr. Sanders made certain allegations in his complaints. The parties took discovery on those allegations. We submitted evidence in support of Mr. Sanders' allegations. The state submitted evidence that they say rebuts those allegations. There is nothing here that rises to the level of extraordinary and egregious misconduct that would warrant a finding of fraud on the court or the ultimate sanction of dismissal. Counsel admitted that the district court's characterization of Mr. Sanders' complaint is wrong, but still insists that this court should affirm a draconian sanction anyway. That is not correct. To the extent that the court is interested in what the medical records actually show, as an initial matter, this court has called into question the reliability of prison medical records earlier this year in the Egan decision, and it's in contravention to the wide body of evidence that Mr. Sanders submitted on the summary judgment record. As my co-counsel pointed out, Mr. Sanders is an undisputedly seriously mentally ill person. He tried his best in a pro se complaint to characterize his suffering and the conditions that led him to repeatedly attempt suicide. An opinion from this court holding that this genuine expression of those conditions constitutes a lie that precludes him from proceeding to the merits on that claim as well as five additional claims is chilling and would do a great disservice not only to Mr. Sanders, but to the legal system in place to protect pro se litigants. Thank you. Thank you, counsel. Thanks to both counsel, and the case will be taken under advisement.